**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:15-cv-553-FDW**
**3:10-cr-69-FDW-1**

| | |
|---|---|
| **SHIRLEY INGRAM, JR.,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **vs.** | ) |
| | )     **ORDER** |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Respondent.** | ) |
| _____ | ) |

**THIS MATTER** is before the Court on Petitioner's Superseding Amended 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, (Doc. 24).

## I.      BACKGROUND[1]

Petitioner was charged in the underlying criminal case by Superseding Indictment with: Count (1) possession of a firearm by a convicted felon (18 U.S.C. §§ 922(g)(1), 924(e)(1)); and Count (2) possession of a firearm in furtherance of a drug trafficking crime, *i.e.*, possession with intent to distribute a controlled substance (18 U.S.C. §§ 924(c)(1), 3559(c)). (3:10-cr-69, Doc. No. 25).

Petitioner filed a Motion to Suppress evidence including a Glock handgun that was seized from a BMW registered in his mother's name, arguing that his mother was not able to give valid consent for the search due to dementia. (Id., Doc. No. 9).

At the suppression hearing, Officer Bright testified that he responded to Lachica Alexander's residence pursuant to a 911 call about a domestic dispute. (3:10-cr-69, Doc. No. 19

---

[1] This section is not exhaustive. Additional facts will be addressed in the Discussion section, *infra*, as relevant to Petitioner's § 2255 claims.

at 7). When Officer Bright arrived at the scene, Ms. Alexander reported that her boyfriend, Petitioner, is a convicted felon and had locked himself inside her residence and that he had a gun. (Id., Doc. No. 19 at 8). Officer Bright knocked on the door several times and gave one verbal command to open the door. Petitioner came to the front door and Officer Bright immediately frisked him for weapons; Petitioner did not have any weapons on his person at that time. Officer Bright asked Petitioner what was going on and Petitioner told him about an argument with Ms. Alexander about groceries. (Id., Doc. No. 19 at 8-9).

During this conversation, Officer Bright clearly saw in Petitioner's loose shirt pocket an old prescription pill bottle with a dirty, worn sticker with no name but had "H-Y" on it. (Id., Doc. No. 19 at 9). In the officer's training and experience as a narcotics officer, H-Y means hydrocodone, which is an illegal substance. (Id.). Officer Bright grabbed the pill bottle from Petitioner's shirt pocket, turned it on its side, and could see that there were several different types of pills and a small bundle of marijuana inside. (Id.). Officer Bright seized the pill bottle from Petitioner's shirt pocket and asked him to wait on the front porch.

Officer Bright then went into the residence with Ms. Alexander who immediately asked if he found a gun on Petitioner. Officer Bright indicated that he had not, and she said "Well, if it's not on him, he's either hid it or it's in his car." (Id., Doc. No. 19 at 10). Ms. Alexander started searching around the residence and motioned for Officer Bright to follow her into her bedroom. Ms. Alexander immediately noticed a laundry detergent box under her bed and opened the top. A medium sized bag of marijuana was inside the detergent box along with a heavy black nylon bag containing a locked Heckler & Koch firearm. (Id., Doc. No. 19 at 10-11). In the bag with the firearm was dentification belonging to one of Ms. Alexander's roommates, Flight Deck Officer Levi Patterson. (Id., Doc. No. 19 at 36). It was only "[a]fter putting the gun on the bed…" that

2

Officer Bright "[w]ent out on the front porch and … took the defendant into custody." (Id., Doc. No. 19 at 12).

Petitioner was then searched and officers found a large key ring. Officer Bright asked Petitioner whether the gray BMW in front of the residence was his and "[Petitioner] said it was his mother's and that [Officer Bright] could not search it." (Id., Doc. No. 19 at 12). At that point, a K-9 unit was called. (Id., Doc. No. 19 at 24). The dispatcher located the vehicle's registered owner, Elizabeth Mason, who is Petitioner's mother. (Id., Doc. No. 19 at 25). Officer Klimasewiski went to Mrs. Mason's home to attempt to get consent to search the BMW and Mrs. Mason invited him inside to talk. (Id., Doc. No. 19 at 46). Mrs. Mason made conversation and Officer Klimasewiski explained why he was there. Mrs. Mason did not immediately recall the vehicle and said she does not drive. (Id., Doc. No. 19 at 47). The officer explained that her son might be driving the car and she said "[o]h yeah," and that "[s]he remembered one day her son took her to the DMV and had her … register the car in her name." (Id., Doc. No. 19 at 48). The officer explained that he wanted to search the car. Mrs. Mason agreed and signed a consent form which was introduced into evidence. (Id., Doc. No. 19 at 49-51); (Id., Doc. No. 14-1). This entire conversation took place in front of Mrs. Mason's husband. (Id., Doc. No. 19 at 50). Mrs. Mason behaved rationally the entire time the officer was present, she understood that he was a police officer, and she appeared to understand the nature of her consent. (Id., Doc. No. 19 at 51-52). The officer invited Mrs. Mason to come witness the search but she declined for health reasons, but her husband agreed to come with the officer. (Id., Doc. No. 19 at 53). On cross-examination, Officer Klimasewiski explained that Mrs. Mason was very supportive of the police and explained that "if there was any way to help police officers, she was going to do that" and that one of her sons is a retired police officer. (Id., Doc. No. 19 at 58).

The defense called Charlene Anderson, Petitioner's sister, who testified that their mother has Alzheimer's and problems with her behavior began two or two-and-a-half years earlier. She started wrapping items including mail and money in paper towels and put them in bags and no longer recognizes her children. (Id., Doc. No. 19 at 61-67). Two years earlier, Mrs. Mason had accidentally shot herself in the foot with a rifle, did not recall the incident, and thought she had stepped on a nail. (Id.). Anderson testified that, "[w]hatever the policeman wanted, [Mrs. Mason] would have followed through with it because he is a police officer," and it would not have occurred to her that she had the right to do something different. (Id., Doc. No. 19 at 70).

Mr. Mason testified for the defense that his wife is in a nursing home. (Id., Doc. No. 19 at 83). He did not recall a police officer talking to his wife or signing a paper but he did recall police taking him to go get a car and driving it back. (Id., Doc. No. 19 at 84-85).

Petitioner testified at the suppression hearing that, when police came to his home, he opened the door because he thought it was Ms. Alexander. The first thing the officer did was to reach into his pocket and grab the pill bottle and immediately handcuffed him. When officers asked if they could search his car he said "[n]o, you can't search my car … I ain't done nothing wrong." (Id., Doc. No. 19 at 87-88). He denied saying that it was his mother's car and, when he told officers that they could not search it, they called for dogs. (Id., Doc. No. 19 at 89). He testified that his mother is 76 years old, does not recognize him, and he did not know anyone had gone to his mother's house until after he was in jail. (Id., Doc. No. 19 at 90).

The Court denied the Motion to Suppress and made the following findings of fact:

> Upon arriving at the scene, Officer Bright encountered Ms. Lachica Alexander who informed Officer Bright that her boyfriend was a convicted felon and that there was a firearm inside the house. Officer Bright … knocked on the front door of the house, identifying himself as CMPD and giving a voice command to open the door…. Officer bright … frisked Defendant for weapons and found

none. Responding to Officer Bright's questions, Defendant informed Officer Bright that he and Ms. Alexander had been in an argument over groceries.

During this discussion, Officer Bright noticed that Defendant was wearing an over-sized shirt made of a loose, silk-like material. In Defendant's shirt-pocket, **Officer Bright was able to clearly see a prescription pill bottle**…. Based on the appearance of the bottle, Officer Bright concluded from his training and experience that the pill bottle was likely used to transport narcotics.

Officer Bright reached into Defendant's shirt-pocket and seized the pill bottle. Officer Bright saw that the pill bottle contained several different types of pills and a small bundle of what appeared to be marijuana….

Officer Bright asked Defendant to wait with Officer Secundi on the front porch of the house and addressed Ms. Alexander, brining her inside the house…. Ms. Alexander signaled for Officer Bright to follow her into the bedroom, where Officer Bright saw a Gain laundry detergent box lying under the bed…. When Ms. Alexander opened the box, Officer Bright saw that it contained a clear plastic bag containing what appeared to be marijuana sitting on top of a black nylon bag … and determined from the weight that the bag contained a heavy item, which Officer Bright suspected to be either a firearm or a heavy piece of metal.

Officer Bright unzipped the bag enough to observe the grip and butt of a firearm, later determined to be a H&K USP .40 caliber pistol….

**Officer Bright then went out onto the front porch and handcuffed Defendant, placing him under arrest**….

Officer Bright testified that Defendant was placed under arrest for possession of the marijuana and H&K firearm found in the detergent box, not Defendant's possession of the pill bottle containing marijuana and other pills.

During a search of Defendant's person, Officer Bright found a key ring. Officer Bright asked Defendant if the vehicle parked in front of the house, a gray 2003 BMW 745Li, was his vehicle. Officer Bright testified that Defendant "said it was his mother's and that [Officer Bright] could not search it."

Officer Bright called for additional units…. Upon arriving at the scene, Officer Gerson assumed the investigation… [and] determined that a K-9 unit would be necessary to conduct a search of the exterior of the vehicle….

Both Officer Gerson and Officer Brown asked Defendant if they would be able to search the vehicle [and] … Defendant told the CMPD officers "he could not give consent to search the car. It belonged to his mother."

… [T]he Court finds as a matter of fact that Defendant's independent statements to Officer Bright and Officer Gerson constituted a *disclaimer* of ownership of the vehicle and a *disavowal* of authority to consent to a search. Defendant did not refuse a search of the vehicle; rather he pretended as if he could not authorize a search of the BMW….

Officer Gerson … determined it was registered to Mrs. Elizabeth Mason, Defendant's mother…. [and] determined that, as the owner, Mrs. Mason's consent was necessary.
…
Officer D.P. Klimasewiski … drove to Mrs. Mason's house … to ask her consent…. Mrs. Mason signed a consent form … permitting the police to conduct a search of the 2003 BMW 745Li.

Nothing in Mrs. Mason's behavior or physical demeanor indicated to Officer Klimasewiski that she lacked capacity to consent.
…
There is no evidence that Mrs. Mason's consent was the result of coercion or intimidation or was otherwise given involuntarily.
…
Based on all the evidence presented concerning Mrs. Mason's mental capacity (e.g. Mrs. Mason's comprehension during Officer Klimasewiski's interview, Mr. Mason's willingness to sign the consent form as a witness, and Mrs. Anderson's hearsay statement regarding Mrs. Mason's diagnosis), the Court finds as a matter of fact that **Mrs. Mason was of sufficiently sound mind and had adequate mental capacity to appreciate the consequences of consenting to the search**.

(Id., Doc. No. 43 at 8) (emphasis added).

The Court concluded that Petitioner retained a reasonable expectation of privacy in the vehicle and therefore had standing to challenge the search under the Fourth Amendment. However, Petitioner's testimony regarding his statements to police was "incredible and false" and that he disclaimed the authority to consent to a search. (Id., Doc. No. 43 at 14). The Court found that Mrs. Mason had authority to consent to the search, she had the capacity to consent, and that her consent was freely and voluntarily given under the totality of the circumstances. (Id., Doc. No. 43 at 15-20). The Court also rejected Petitioner's claim that the length of time he was detained at the scene while officers were obtaining Mrs. Mason's consent was unreasonable because he had been

arrested at that point and was not subjected to a lengthy <u>Terry</u>[2] stop. In conclusion, the Court found that "the search of the 2003 BMW 745Li was the result of the voluntary consent of a third-party possessing common authority over the vehicle to permit the search [and] [a]ccordingly, the seizure of the items taken from the vehicle was lawful." (<u>Id.</u>, Doc. No. 43 at 24).

At trial, the Government presented evidence about Officer Bright's contact with Ms. Alexander, Petitioner, and his actions in the residence consistent with the evidence at the suppression hearing. The Government further presented evidence that Ms. Alexander's roommate, Levi Patterson, had the H&K handgun issued to him for his job, he keeps the handgun in his closet, and nobody had permission to go in his closet and take it. (<u>Id.</u>, Doc. No. 83 at 270, 280, 290). The Government presented evidence that a Glock handgun, digital scale, marijuana and cocaine residue, and ziploc bags were recovered from the BMW's trunk. (<u>Id.</u>, Doc. No. 83 at 135, 315). DNA consistent with Petitioner was found on the Glock handgun with a probability of 1 in 662. (<u>Id.</u>, Doc. No. 84 at 84-86).

Detective Randy Call testified that he conducted a recorded interview with Petitioner on the afternoon of his arrest after providing him <u>Miranda</u> warnings. At first, Petitioner said that he did not drive the BMW that day and that Ms. Alexander was the last one to drive it. (<u>Id.</u>, Doc. No. 84 at 171). He also initially denied having a gun in the BMW's trunk. (<u>Id.</u>, Doc. No. 84 at 15-74). Petitioner then admitted that the scales found in the trunk were to weigh a shipment of marijuana that was expected later than week and offered to provide Detective Call information about the shipment of 800 pounds of marijuana if Petitioner did not get a felony charge for the handgun. (<u>Id.</u>, Doc. No. 84 at 174-75, 178).

---

[2] <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).

While instructing the jury, the Court read the relevant portion of the Superseding Indictment to the jury and instructed the jury on the elements of the offense. <u>See</u> (3:10-cr-69, Doc. No. 86 at 55-59).

The special verdict form referred to Count (1) of the Superseding Indictment and provided the jury with two alternates: (a) the Heckler & Koch .40 caliber pistol and (b) the Glock .40 caliber pistol. (<u>Id.</u>, Doc. No. 53). The jury unanimously found that Petitioner was guilty of Count (1)(b) with regards to the Glock .40 caliber pistol, and guilty in Count (2) of possessing the Glock .40 caliber pistol in furtherance of a drug trafficking crime. (<u>Id.</u>, Doc. No. 53).

The Presentence Investigation Report ("PSR") calculated the base offense level for Count (1) as 14 because the offense is a violation of § 922. (<u>Id.</u>, Doc. No. 68 at ¶ 14). However, Petitioner qualifies as an armed career criminal based on prior convictions for violent felonies or serious drug offenses (breaking and entering 76CR49165, 76CR43321, breaking and entering and larceny, 80CRS52187, preparation to commit burglary 83CRS68062, second-degree kidnapping 87CRS18069, breaking and entering 87CRS18071, and breaking and entering 86CRS14807), and the base offense level for Count (1) is therefore 33. (<u>Id.</u>, Doc. No. 68 at ¶ 20). Count (2) has a term of imprisonment required by statute. (<u>Id.</u>, Doc. No. 68 at ¶ 23). The PSR's criminal history section scored seven criminal history points and a criminal history category of III, however, the criminal history category for career offenders is IV. (<u>Id.</u>, Doc. No. 68 at ¶¶ 50, 51). The resulting guidelines range was 188 to 235 months' imprisonment followed by at least two years but not more than five years of supervised release. (<u>Id.</u>, Doc. No. 68 at ¶¶ 121, 125).

The Court adjudicated Petitioner guilty and sentenced him to a total of 240 months' imprisonment (180 months for Count (1) and 60 months, consecutive, for Count (2)), and three years of supervised release. (<u>Id.</u>, Doc. No. 79).

Petitioner argued on direct appeal that the Court erred by denying his Motion to Suppress, denying his Motion for Judgment of Acquittal because there was insufficient evidence to support the § 924(c) conviction, designating him an armed career criminal based on prior convictions that do not qualify as predicate offenses, and imposing an armed career criminal sentence based on facts not alleged in the indictment and proved to the jury beyond a reasonable doubt. The Fourth Circuit Court of Appeals affirmed. United States v. Ingram, 597 Fed. Appx. 151 (4th Cir. 2015). It held with regards to the ACCA claim that its "recent decision in United States v. Mungro, 754 F.3d 267 (4th Cir. 2014), … holding that § 14-54(a) convictions qualify as ACCA predicate convictions, forecloses this argument…." Id. at 153. The United States Supreme Court denied certiorari, Ingram v. United States, 135 S.Ct. 2823 (2015).

Petitioner filed a § 2255 Motion to Vacate in the instant case. He filed a § 2255 Motion to Vacate, numerous motions for leave to correct, amend, and/or supplement, motions to withdraw prior pleadings, and a motion for summary judgment. (Doc. Nos. 2, 3, 4, 5, 7, 8, 9, 10, 11). The Court construed these *pro se* pleadings as seeking to withdraw all claims except that based on Mathis v. United States, 136 S.Ct. 2243 (2016), and denied relief on the merits. Ingram v. United States, 2017 WL 4351379 (W.D.N.C. Sept. 29, 2017). Petitioner then filed a Motion for Reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, which the Court denied. Ingram v. United States, 2018 WL 1697315 (W.D.N.C. April 6, 2018).

On appeal, the Fourth Circuit construed the withdrawal as conditioned on the success of Petitioner's Mathis claim and remanded for consideration of Petitioner's remaining claims. United States v. Ingram, 758 Fed. Appx. 332 (4th Cir. 2019).

Because the multitude of *pro se* filings made Petitioner's active § 2255 claims unclear, the Court ordered Petitioner to file a single Superseding Amended Motion to Vacate, (Doc. No. 24),

which is now before the Court for consideration. He argues *verbatim*:

(1) Ingram is not an armed career criminal because the jury found him not guilty of the requisite predicate felony;

(2) The Court exceeded its judiciary authority by imposing unauthorized consecutive sentences upon Ingram that deprived from two non-free-standing statutory enhancement statutes;

(3) The drug trafficking allegations argued before the jury during Ingram's trial constructively amended the indictment;

(4) The State law enforcement officers' testimonies violated Ingram's constitutional Fifth Amendment Miranda[3] right;

(5) There were inconsistencies with the evidence and the Court's factual findings during the suppression hearing;

(6) The controlled substances found on Ingram were derivative evidence;

(7) The state law enforcement officers' use of the sniff dog invalidated the consent to search received after-the-fact;

(8) Ingram could not be prosecuted for the flight officer's firearm;

(9) Ingram was denied his Sixth Amendment confrontation rights; and

(10) Ingram counsel's performances were defective and that resulted into prejudice and ineffective assistance from his counsels.

(Doc. No. 24).[4]

Petitioner also filed a Letter and Motion for Leave to Supplement Superseding Amended § 2255 Motion to Vacate arguing that his prior North Carolina burglary convictions do not qualify as violent felonies pursuant to Mathis. (Doc. Nos. 24-1, 24-2).

The Government has filed a Response, (Doc. No. 29), arguing that all of Petitioner's claims are procedurally defaulted from § 2255 review except Claims (5) and (10), that Petitioner has failed

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).
[4] Several claims are repetitive and overlapping. They have been reorganized and renumbered in the Discussion section, *infra*.

to demonstrate cause and prejudice or actual innocence to excuse that procedural default, that the ineffective assistance of counsel claims are vague and conclusory, and that all the claims are meritless.

In his Reply, (Doc. No. 30), Petitioner restates claims (2), (3), (4), (5), (6), (7), (9), and (10) and argues that counsel's ineffective assistance deprived him of the right to confront witnesses. He also argues that the Court abused its discretion in these § 2255 proceedings by denying his request for the appointment of counsel.

## II.    STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal citations omitted) ("the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. See United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994). Actual prejudice is then shown by

demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). To establish cause based upon ineffective assistance of counsel, a petitioner must show that the attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Murray, 477 U.S. at 488; Strickland v. Washington, 466 U.S. 668, 687 (1984). In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a petitioner must show actual innocence by clear and convincing evidence. See Murray, 477 U.S. at 496.

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. In many cases, an evidentiary hearing is required to determine whether or not counsel was ineffective for misadvising a petitioner about a plea offer. See generally United States v. Witherspoon, 231 F.3d 923, 926–27 (4th Cir. 2000); 28 U.S.C.A. § 2255(b). After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III.     DISCUSSION

Construing the *pro se* filings liberally, Petitioner appears to allege that ineffective assistance of counsel is "cause" for excusing his procedural default of all the claims except for his claims of inconsistent findings at the suppression hearing and ineffective assistance of counsel (originally numbered Claims (5) and (10)). Ineffective assistance of counsel cannot excuse

Petitioner's procedural default because these claims are meritless and counsel was not ineffective for failing to raise them.[5] All of Petitioner's other claims also fail on the merits.

**(1)**     <u>**Indictment**</u>

An indictment is sufficient if it contains the elements of the offense charged, fairly informs the defendant of the charge, and enables the defendant to plead double jeopardy as a defense in a future prosecution for the same offense. <u>United States v. Daniels</u>, 973 F.2d 272, 274 (4th Cir. 1992). "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial on the charge on the merits." <u>Costello v. United States</u>, 350 U.S. 359, 363-64 (1956). Neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which a grand jury must act. <u>Id.</u> at 362. A defendant is not entitled to any preliminary trial to determine the competency or adequacy of the evidence before a grand jury. <u>Id.</u> at 363.

Petitioner challenges the sufficiency of the indictment, arguing that he could not be prosecuted for the H&K firearm because it did not belong to him, but rather, to Ms. Alexander's flight officer roommate Levi Patterson. Petitioner claims that the Government conceded, and the Court found at the suppression hearing, that the Heckler & Koch and marijuana in the detergent box belonged to Patterson. The Court should not have permitted the Government to indict Petitioner for Patterson's firearm and marijuana and should not have allowed the Government to argue to the jury that Petitioner possessed the H&K and the marijuana. This evidence prejudiced the jury against Petitioner and caused a different trial outcome. He argues that his conviction should be vacated because he was denied due process and a fair trial.

---

[5] Petitioner does not appear to assert that actual innocence excuses his procedural default. Even if he made such a claim it would be rejected because it is refuted by the record.

Petitioner is precluded from arguing that there was insufficient evidence to indict him because he does not allege that it was invalid on its face or was otherwise defective. See Costello, 350 U.S. at 363. In any event, Patterson's ownership of the H&K firearm was not dispositive of whether Petitioner possessed it; this was a question for the jury.[6] Petitioner's argument is moot insofar as the jury found him not guilty of possessing the H&K firearm so any error with regards to its introduction at trial was harmless. See United States v. Bernard, 757 F.2d 1439, 1443 (4th Cir. 1985) (the issue of whether testimony was properly admitted was moot where the verdict itself revealed that the jury did not use that testimony in arriving at its verdict; "testimony related to charges on which there was an acquittal is generally not harmful even if improperly admitted at trial."); see, e.g., United States v. Jones, 356 F.3d 529 (4th Cir. 2004) (even if drug conspiracy count was overbroad, the error was harmless because defendant was acquitted of that count); United States v. Wooten, 688 F.2d 941, 947 (4th Cir. 1982) (even if there was an error in the jury instructions, this was harmless because the defendant was acquitted of the charge at issue); see also United States v. Noel, 502 Fed. Appx. 284 (4th Cir. 2012) (admission of victim impact testimony was harmless where defendant was acquitted of that charge, indicting the jury was not unfairly influenced by sympathy). This claim is therefore meritless and § 2255 is not warranted.

**(2)**     **Fourth Amendment**

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. Const. amend. IV. "The Supreme Court has identified two kinds of personal seizures: (1) brief investigatory stops of the sort identified in Terry v. Ohio, 392 U.S. 1

---

[6] To the extent that he argues the marijuana and H&K firearm should found inside the detergent box should have been suppressed, this claim is barred because Petitioner did not raise this claim in his Motion to Suppress. Fed. R. Crim. P. 12(b)(3)(C) (motions to suppress evidence must be made before trial); United States v. Reinoso, 232 Fed. Appx. 296 (4th Cir. 2007) (claim not raised in a motion to suppress is waived).

(1968)[ ] and (2) arrests." <u>United States v. Johnson</u>, 599 F.3d 339, 344 (4th Cir. 2010). "[L]aw enforcement officers may seize evidence in plain view, provided that they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made." <u>Kentucky v. King</u>, 563 U.S. 452, 463 (2011) (citing <u>Horton v. California</u>, 496 U.S. 128, 136–40 (1990)). Under this "plain view" exception to the warrant requirement, "a law enforcement officer may seize evidence in "plain view" without a warrant where (1) the officer is lawfully located in a place from which the item can plainly be seen; (2) the officer has a lawful right of access to the item itself; and (3) the incriminating nature of the seized item is immediately apparent." <u>United States v. Davis</u>, 690 F.3d 226, 263 (4th Cir. 2012). Once a litigant is provided a full and fair opportunity to litigate a Fourth Amendment claim, he cannot re-litigate the claim in a motion pursuant to § 2255 unless there has been an intervening change in law. See <u>Stone v. Powell</u>, 428 U.S. 465, 494 (1976); <u>Davis v. United States</u>, 417 U.S. 333, 342 (1974).

The record reflects that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims at trial and he fails to demonstrate that there has been an intervening change of law. Accordingly, Petitioner cannot re-litigate these claims in a § 2255 motion. See <u>Wright v. Wainwright</u>, 537 F.2d 224, 226 n. 4 (4th Cir.1976). Petitioner's Fourth Amendment claims also fail on the merits because no constitutional violation occurred.

**(A)** Petitioner argues that officers frisked him and discovered illegal drugs in violation of the Fourth Amendment and that the controlled substances found on him were "derivative evidence" that should have been suppressed. Petitioner appears to argue that the plain view exception does not apply because there is nothing inherently illegal about a prescription bottle and accordingly Petitioner's arrest was illegal. For these reasons, he argues, his conviction must be vacated because all the other evidence collected in the case was fruit of the poisonous tree. Even

if the initial frisk was for safety purposes, the subsequent search violated the Fourth Amendment. Further, the stacking of inadmissible evidence caused the jury to become "jaundice-eyed" towards Petitioner that substantially influenced the jury's verdict. In his Reply, Petitioner argues that it is perfectly legal for a person to possess their own medications in a pill bottle, that Officer Bright did not observe the contents of the pill bottle before seizing it, and that the search violated the Fourth Amendment. (Doc. No. 30 at 3-4).

This claim is refuted by the record, which reveals that the seizure of the pill bottle was supported by the facts and the law. The Court made factual findings, that were supported by the evidence, that Officer Bright was able to clearly observe the pill bottle in Petitioner's shirt pocket. Based on the appearance of the bottle, including the letters "H-Y" which stands for hydrocodone, Officer Bright concluded from his training and experience that the pill bottle was likely used to transport narcotics. Ingram, 2010 WL 5441671 (W.D.N.C. Dec. 28, 2010). The seizure of the pill bottle was supported by the plain view doctrine because Officer Bright was lawfully at the residence to investigate a domestic incident, observed a pill bottle in Petitioner's loose shirt pocket while talking to Petitioner, and its incriminating nature was immediately apparent to this narcotics-trained officer. See generally United States v. Williams, 41 F.3d 192 (4th Cir. 1994) (warrantless search of packages seized from suitcase was lawful under the plain view exception because it was a foregone conclusion that the cellophane-wrapped one-kilogram packages were narcotics). Even if denial of the suppression motion was erroneous, any error was harmless. Petitioner's 924(c) conviction were not based on the contents of the pill bottle, but rather, the drug trafficking paraphernalia discovered in his car trunk and his own recorded interview admitting that he was expecting an 800-pound marijuana shipment later that week.

    **(B)**    Petitioner argues that the Court incorrectly found that Petitioner was arrested for

the H&K gun and marijuana in the detergent box inside the house whereas he was actually arrested for the pill bottle in his shirt pocket. Petitioner argues that Officer S.J. Lawrence's affidavit stated that Petitioner was arrested for the bottle of marijuana and that the Court's mistake of fact warrants vacatur of his sentence.

The Court made factual findings, that were supported by the evidence, that Officer Bright put Petitioner under arrest *after* finding a gun and marijuana inside the residence, (Id., Doc. No. 43 at 4), and that Officer Bright arrested Petitioner because of the marijuana and gun in the detergent box rather than the pill bottle. (Id., Doc. No. 19 at 12, 22). Petitioner was free to impeach Officer Bright's testimony at trial which counsel did, and his credibility was an issue for the jury. See (Id., Doc. No. 83 at 80) (counsel asking Officer Bright on cross-examination, "isn't it true, sir, that the affidavit of arrest you prepared only charged him with possession of marijuana and not possession of any gun?," to which Bright responded "[t]hat's true."). The Court's denial of the suppression motion was supported by the evidence and was legally sound, therefore, § 2255 relief will be denied.

(C) Petitioner appears to argue that the state law enforcement officers' use of a K-9 unit to sniff the BMW invalidated the subsequent consent to search and exceeded the scope of the Terry stop. Officer Bright asked Petitioner for consent to search the vehicle after he was handcuffed and Petitioner refused, saying the BMW belongs to his mother. Officer Bright then called for the assistance of K-9 officers with their sniff dog. Two officers arrived and Petitioner was again asked to give consent and he refused. The officers began the search of the vehicle without the owners' consent, which they did not receive until after the fact. By then, he argues, they had already violated the Fourth Amendment and invalidated the search of the vehicle and exceeded the scope of the Terry stop. Therefore, all the evidence obtained from the BMW was illegally obtained and

was inadmissible.

Petitioner's contention that he was stopped pursuant to <u>Terry</u> when officers asked his consent to search, called for K-9 unit, and obtained consent from Mrs. Mason, is factually incorrect. Officers responded to an emergency call from Petitioner's girlfriend, Ms. Alexander, who said he carries a gun and is a convicted felon. Officer Bright saw a pill bottle in Petitioner's shirt pocket in plain view and discovered marijuana and pills inside. However, Officer Bright did not handcuff Petitioner at that time. It was only after Officer Bright found marijuana and a firearm inside the residence that he handcuffed Petitioner pursuant to probable cause, which constituted an arrest and ended the <u>Terry</u> stop. The subsequent delays to call a K-9 unit and obtain consent to from Mrs. Mason are irrelevant under <u>Terry</u> because Petitioner was arrested at that point. The subsequent K-9 sniff of the car was supported by probable cause and, in any event, did not uncover any illegality. The consent to search from Mrs. Mason was also valid and did not violate the Fourth Amendment. <u>See</u> Section (D), *infra.* No impropriety occurred with regards to Petitioner's arrest or the discovery of weapons and drugs in the home and BMW, and therefore, the resulting evidence was admissible at trial.

**(D)** Petitioner argues that the Government failed to prove that his mother, Mrs. Mason, was competent to consent to search the BMW and that the Court abused its discretion by failing to require an expert witness to testify about her competency to consent. He argues that Mrs. Mason suffered from "severe dementia" and was unable to give consent and that the Court abused its discretion by failing to require an expert witness to testify about her mental condition. (Doc. No. 24 at 36). Officer Klimasewiski's testimony about her dementia at the suppression hearing and at trial was unreliable under Fed. R. Ev. 702 and <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993). The officer's personal observations and testimony that she did not appear to be suffering

from dementia were irrelevant. Mrs. Mason's stepdaughter Charlene Anderson, who had personal knowledge of Mrs. Mason's condition, testified that she did have dementia on that day and her testimony should have carried more weight than the officer's testimony. Petitioner was denied a fair trial because the consent was invalid due to Mrs. Mason's incompetency. The court abused its discretion by failing to require specialists to testify to her severe dementia.

The Court considered the evidence presented at the suppression hearing and concluded, under the totality of the circumstances, that Mrs. Mason's consent was voluntary. See Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973) (voluntariness of consent to a search must be "determined from the totality of all the circumstances"). Petitioner's contention that counsel should have presented, and the Court should have required, medical evidence and expert testimony on the issue is legally incorrect; no particular type of evidence was required so long as it satisfied the totality of the circumstances standard. Id. Moreover, Petitioner's argument is conclusory. He does not come forward with any evidence to support the self-serving conclusion that medical records and expert testimony would have demonstrated Mrs. Mason's incompetency to consent. See generally Miller v. United States, 261 F.2d 546, 57 (4th Cir. 1958) (§ 2255 petitioner has the burden of proving the grounds for collateral attack by a preponderance of the evidence); Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) (in the § 2254 context, "an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); Penson v. United States, 2019 WL 498852 (W.D.N.C. Feb. 8, 2019) (applying Beaver to a § 2255 petition), *appeal dismissed*, 2019 WL 3451850 (4th Cir. July 31, 2019). Petitioner's unsupported contentions are inadequate to warrant § 2255 relief.

**(3)**     **Fifth Amendment**

The Fifth Amendment's Self-Incrimination Clause provides that "[n]o person … shall be

compelled in any criminal case to be a witness against himself." U.S. Const. Amend. 5. "[T]he core protection afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant to testify against himself *at trial*." <u>United States v. Patane</u>, 542 U.S. 630, 641 (2004) (emphasis added). The Clause "cannot be violated by the introduction of nontestimonial evidence obtained as a result of voluntary statements." <u>Id.</u> Therefore, with respect to mere failure to warn, there is nothing to deter so the fruit of the poisonous tree doctrine does not apply. <u>Id.</u>

Petitioner argues that the State law enforcement officers' testimony violated the Fifth Amendment because the officers failed to inform him of his rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), before they interrogated him, frisked him, and arrested him. Officer Bright testified that, when he searched Petitioner, he found keys to a BMW but Petitioner said the car was his mother's and that officers could not search it. Petitioner claims that Officer Bright's statement was used to show that Petitioner had something to hide, *i.e.*, the Glock, scale, and contraband found in the vehicle. Petitioner argues that Officer Bright's testimony about Petitioner's statement tainted the trial and shifted the burden of proof to the defense.

The particular testimony by Officer Bright to which Petitioner refers in his § 2255 petition occurred at the suppression hearing rather than trial and therefore cannot support § 2255 relief. (3:10-cr-69, Doc. No. 19 at 12); <u>see</u> <u>Patane</u>, 542 U.S. at 641.

Moreover, Officer Bright's trial testimony did not violate Petitioner's constitutional rights. Officer Bright testified at trial that, as soon as Petitioner opened the residence door, he frisked Petitioner because police had information that he might be armed. (<u>Id.</u>, Doc. No. 83 at 41). Officers searched the home with consent from Petitioner's girlfriend, Ms. Alexander, and found more marijuana and a firearm. Petitioner was then arrested and handcuffed for officer safety. (<u>Id.</u>, Doc. No. 83 at 50). At that point, Petitioner was searched and Officer Bright located Petitioner's keys

in his pocket including a car key. (Id., Doc. No. 83 at 50-51). Officer Bright asked Petitioner if the keys were to the BMW in front of the residence and Petitioner said that "it was not his car and that [Officer Bright] could not search it." (Id., Doc. No. 83 at 51). Defense counsel objected, requested a mistrial, and argued at a sidebar conference that the testimony violated the Fourth and Fifth Amendments. (Id., Doc. No. 83 at 51-52). The Government argued that Petitioner lacked standing because he disclaimed ownership of the car. (Id.). The Court immediately instructed the jury as follows:

> THE COURT: Ladies and gentlemen of the jury, just like you, defendant has a Fifth Amendment right to remain silent and you can not use it against the defendant if he chooses not to testify. An individual in this country has the right to be free of any form of search which would require a warrant. And that means that if an individual chooses not to consent to a search, that should not be held against him. He has a constitutional right to refuse to consent to a search. And the fact that the defendant in this case chose not to consent to a search, you should not in any way use that against the defendant….

(Id., Doc. No. 83 at 53).

Officer Bright's failure to give Miranda warnings, alone, does not require suppression of the fruits of Petitioner's voluntary statements to the officer about the car's ownership. See Patane, 542 U.S. at 637-38. Any potential prejudice was eliminated by the Court's instruction to the jury that Petitioner's statement to Officer Bright could not be used against him in any way. See generally Greer v. Miller, 483 U.S. 756, 766 (4th Cir. 1987) (a single question, followed by an immediate objection and two curative instructions clearly indicated that the prosecutor's improper question did not violate due process); Richardson v. Marsh, 481 U.S. 200, 208 (1987) (a jury is ordinarily presumed to follow the instructions). Therefore, even if an error occurred, it was harmless.

**(4)** **Confrontation**

The Confrontation Clause protects a defendant's right to cross-examine a declarant making a "testimonial" statement. Davis v. Washington, 547 U.S. 813, 821 (2006); see Crawford v. Washington, 541 U.S. 36 (2004). Although the Supreme Court has not articulated a precise definition of the term "testimonial," such evidence includes, at a minimum, testimony given at a preliminary hearing, before a grand jury, and at a formal trial, as well as statements made during a police interrogation. See Crawford, 541 U.S. at 68. A statement is testimonial in nature if the statement was made or procured with the "primary purpose" of creating an "out-of-court substitute for trial testimony." Ohio v. Clark, 135 S. Ct. 2173, 2180 (2015) (quoting Michigan v. Bryant, 562 U.S. 344, 358 (2011)).

Petitioner contends that his mother's out-of-court statements were testimonial, Officer Klimasewiski's hearsay testimony triggered Petitioner's right to cross-examine Mrs. Mason, and Mrs. Mason's out of court statements should have been suppressed. He argues that the Government used Mrs. Mason's out-of-court statements to bolster its case and prejudiced Petitioner's defense because they played a major role in the jury's deliberations. Petitioner argues that he should receive a new trial due to these due process violations.

Petitioner's confrontation argument is meritless because the challenged testimony was introduced during the suppression hearing and not trial. See Pennsylvania v. Ritchie, 480 U.S. 39, 52-53 (1987); United States v. Matlock, 415 U.S. 164, 175 (1974) (there is "no automatic rule against the reception of hearsay evidence in [suppression] proceedings"); United States v. Raddatz, 447 U.S. 667-79 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial."). No Confrontation Clause violation occurred with regards to Mrs. Mason's out-of-court statements and this claim is meritless.

**(5)**  **Constructive Amendment**

The Fifth Amendment right to indictment by grand jury is violated when the proof offered at trial permits a jury to convict a defendant for a different offense than that for which he was indicted and constructively amends the indictment, resulting in a fatal variance. U.S. Const. Amend. V; United States v. Floresca, 38 F.3d 706, 709 (4th Cir. 1994) (*en banc*). "When a defendant is convicted of charges not included in the indictment, an amendment has occurred which is *per se* reversible error." United States v. Fletcher, 74 F.3d 49, 53 (4th Cir. 1996).

Petitioner contends that the prosecutor's arguments about the drug trafficking allegations constructively amended the Superseding Indictment. He argues that he was initially indicted for a single count of violating § 924(c) by using and carrying a firearm in furtherance of the drug trafficking crime of possession with intent to distribute or distribution of 800 pounds of marijuana, but he was not charged with that drug trafficking offense. Petitioner argues that the Government essentially tried him for the drug trafficking offense even though the grand jury was indicted him for that offense and that his § 924(c) conviction should be vacated. In his Reply, Petitioner argue that the "record speaks for itself" and that, although he was not indicted for violating 21 U.S.C. § 841(a)(1), "there was evidence presented to the jury by the Government that Ingram possessed with the intent to distribute, and distribution of, at least 800 pounds of marijuana…." (Doc. No. 30 at 2).

Petitioner failed to challenge the sufficiency of the Indictment at trial or on appeal, and therefore, this claim is foreclosed on § 2255 review. See United States v. Wilson, 548 Fed. Appx. 876, 879 (4th Cir. 2013). Further, this claim is meritless. Petitioner was indicted for violating § 924(c) and there is no requirement that he be separately charged with the drug trafficking offense. United States v. Carter, 300 F.3d 415, 425 (4th Cir. 2002). The Superseding Indictment sufficiently charged the § 924(c) offense and no constructive amendment occurred.

**(6)      Inconsistent Verdict**

A "verdict is sufficient if the jury's intention can be ascertained with reasonable certainty from the language used in the verdict." Carver v. Martin, 664 F.2d 932, 935 (4th Cir. 1981). When a general verdict of guilty rests on two alternative theories of prosecution, one valid and the other invalid, the verdict should be set aside if it is "impossible to tell which ground the jury selected." Yates v. United States, 354 U.S. 298, 312 (1957), *overruled on other grounds by* Burks v. United States, 437 U.S. 1 (1978); see Bereano v. United States, 706 F.3d 568, 577 (4th Cir. 2013).

Petitioner appears to argue that his § 924(c) conviction cannot stand because the jury found him not guilty of the requisite predicate felony under § 922(g), which deprived the Court of subject-matter jurisdiction to designate him an armed career criminal. He argues that there is an inconsistency between the jury instructions and the verdict form with regards to the firearms at issue, that the Court should have given the jury a general verdict form instead of a special verdict form, and that the Court invaded the province of the jury by directing a guilty verdict for Count (1) whereas the jury found him not guilty of that count. He argues that these errors resulted in an inconsistency between the jury's findings in Counts (1) and (2).

Petitioner's allegations that there was some inconsistency or error with regards to the verdict form and jury instructions are conclusively refuted by the record. The Court read the relevant portion of the Superseding Indictment to the jury and correctly instructed the jury on the elements of the offense. See (3:10-cr-69, Doc. No. 86 at 55-59). The special verdict form referred to Count (1) of the Superseding Indictment and provided the jury with two alternates: (a) the Heckler & Koch .40 caliber pistol and (b) the Glock .40 caliber pistol. (Id., Doc. No. 53). The jury unanimously found that Petitioner was guilty of Count (1)(b) with regards to the Glock .40 caliber pistol, and guilty in Count (2) of possessing the Glock .40 caliber pistol in furtherance of a drug

trafficking crime. There was no inconsistency between the jury instructions and the special verdict form, which ensured that the guilty verdict for Count (1) was unanimous. No error occurred with regards to the jury instructions or verdict form, no directed verdict occurred, and Petitioner's contention that the jury found him "not guilty" of Count (1) is incorrect.

### (7)    Consecutive Sentencing

A criminal defendant is entitled to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." United States v. Gaudin, 515 U.S. 506, 510 (1995). Other than the fact of a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). Further, "any fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury. Alleyne v. United States, 570 U.S. 99, 103 (2013). Judges have discretion in imposing a sentence "*within statutory limits*" in an individual case. Apprendi, 530 U.S. at 481.

Petitioner argues that the Court exceeded its authority by imposing unauthorized consecutive sentences. He argues that his convictions violated Alleyne and Apprendi because the facts that increased his statutory maximum – commission of a drug trafficking offense and felon in possession – were not charged and found by a jury beyond a reasonable doubt. In his Reply, Petitioner argues that § 924(c)(1) is not "free-standing" and therefore that a "conviction of the predicate felony is indispensable." (Doc. No. 30 at 1).

Contrary to Petitioner's contentions, he was found guilty of violating §§ 924(c) and 922(g) by the jury based on a unanimous verdict and legally sufficient evidence. See Ingram, 597 Fed. Appx. at 153; Claim (1), *supra*. The Court was required by statute to impose a consecutive sentence for the § 924(c) violation. Petitioner's contention that he was required to be separately convicted

for a crime of violence is legally incorrect. <u>Carter</u>, 300 F.3d at 425 ("§ 924(c) convictions do not require a conviction on the predicate drug trafficking offense.").

       **(8)**       **<u>Ineffective Assistance of Counsel</u>**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. <u>See</u> U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. <u>See</u> <u>Strickland</u>, 466 U.S. at 687-88. <u>Strickland's</u> deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." <u>Id.</u> at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." <u>Harrington v. Richter</u>, 562 U.S. 86, 104 (2011) (quoting <u>Strickland</u>, 466 U.S. at 689).

Although <u>Strickland</u> ordinarily applies to claims of ineffective assistance of counsel, there are three situations where a presumption of prejudice is appropriate. <u>United States v. Cronic</u>, 466 U.S. 648, 659–660 (1984). Prejudice is presumed when: (1) the defendant is completely denied counsel "at a critical stage of trial;" (2) the lawyer "entirely fails to subject the prosecution's case to meaningful adversarial testing" such that there has been a constructive denial of counsel; and (3) where, although counsel is available to assist the accused during trial, "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of trial." <u>Id.</u> at 659. A finding of *per se* ineffective assistance under any of these three prongs is "an extremely high showing for a criminal defendant to make." <u>Brown v. French</u>, 147 F.3d 307, 313 (4th Cir. 1998). Absent the narrow circumstances of presumed prejudice under <u>Cronic</u>, defendants must show

actual prejudice under <u>Strickland</u>. <u>Glover v. Miro</u>, 262 F.3d 268, 275 (4th Cir. 2001).

Petitioner's reliance on <u>Cronic</u> is misplaced. The record is devoid of any evidence that Petitioner was completely deprived of counsel at a critical stage, that counsel failed to subject the prosecution's case to meaningful adversarial testing, or that counsel was present but unable to provide effective assistance. The <u>Strickland</u> standard therefore applies to Petitioner's claims of ineffective assistance of counsel.

Petitioner alleges that counsel was ineffective for failing to raise the issues already discussed in this Order.[7] However, all of the claims are meritless and counsel can be deemed ineffective for failing to raise those meritless issues.[8] <u>See</u> <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.").

Petitioner also argues that counsel misadvised him reject a plea offer and go to trial, telling him that he could get off. The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. <u>See</u> <u>Missouri v. Frye</u>, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. <u>Lafler v. Cooper</u>, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); <u>Merzbacher v. Shearin</u>, 706 F.3d 356, 363 (4th Cir. 2013). As a general rule, defense counsel has

---

[7] To the extent that Petitioner suggests counsel was ineffective for failing to adopt his Rule 37 Motion, this argument is rejected because the Motion raises the same meritless claims that were previously addressed in this Order.

[8] Counsel's suggestion that appellate counsel was ineffective is vague and conclusory because Petitioner fails to identify the claims that appellate counsel should have raised on direct appeal that had a reasonable probability of succeeding. None of the claims that Petitioner has identified in the instant petition provides a basis for a claim of ineffective assistance of appellate counsel because they are all meritless. <u>See</u> generally <u>Davila v. Davis</u>, 137 S.Ct. 2058 (2017) ("[e]ffective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed."); <u>Smith v. Murray</u>, 477 U.S. 527, 536 (4th Cir. 2014) ("winnowing out weaker arguments on appeal and focusing on those more likely to prevail … is the hallmark of effective appellate advocacy."); <u>see</u>, <u>e.g.</u>, <u>Call v. Branker</u>, 254 Fed. Appx. 257 (4th Cir. 2007) (appellate counsel was not ineffective for failing to raise an issue that was without merit and would have been unsuccessful on appeal).

the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. Frye, 566 U.S. at 145. To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel, as well as a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. Id. at 147. It is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. Id.

This claim fails because Petitioner has not shown that there was a plea offer that he would have accepted. There is no record of a written plea offer ever being offered, neither the prosecutor nor defense counsel recalled a plea offer ever having been made and, after reviewing the record, the prosecutor concluded that no plea offer was made. (3:10-cr-69, Doc. No. 87 at 80-81, 92-93, 100-02). Petitioner cannot show that counsel was ineffective for failing to present a non-existent plea offer. See United States v. Butler, 118 Fed. Appx. 371, 373 (10th Cir. 2004) ("Failure to inform [defendant] of a non-existent plea offer cannot form a basis for an inadequate assistance of counsel claim."). Nor can he show deficient performance or prejudice because a guilty plea would have waived his ability to challenge suppression issues, he fails to allege that the Court would have accepted his plea,[9] and he fails to explain how a straight-up guilty plea would have probably resulted in a more favorable outcome. (Id., Doc. No. 87 at 101-02).

---

[9] A defendant has no constitutional right for a judge to accept a guilty plea. See North Carolina v. Alford, 400 U.S. 25, 38 n.11 (1970) (addressing a guilty plea coupled with a claim of innocence); United States v. Greaves, 121 F.3d 701 (4th Cir. 1997) (although a defendant has the right to plead guilty to an offense, the constitution does not require that a trial judge accept that plea).

**(9)** **Mathis**

Petitioner argues that he is no longer candidate for ACCA sentencing because his violations of N.C.G.S. § 14-54(a) no longer qualify as ACCA predicates after Mathis and that he should be resentenced.

The Fourth Circuit denied a certificate of appealability on Petitioner's Mathis claim and therefore this claim is outside the scope of the Fourth Circuit's remand. Ingram, 758 Fed. Appx. at 333. This claim is also meritless for the reasons set forth in the Court's prior order. (Doc. No. 12); see United States v. Mungro, 754 F.3d 267 (4th Cir. 2014); United States v. Atkinson, 759 Fed. Appx. 174 (4th Cir. 2019); United States v. Robinson, 714 Fed. Appx. 275 (4th Cir. 2018); United States v. Beatty, 702 Fed. Appx. 148 (4th Cir. 2017); United States v. Alexis, 697 Fed. Appx. 239 (4th Cir. 2017).

**IV.    CONCLUSION**

Based on the foregoing the Superseding Amended 28 U.S.C. § 2255 Motion to Vacate, (Doc. No. 24), is dismissed with prejudice and denied.

**IT IS, THEREFORE, ORDERED** that:

1.    The Superseding Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 24), is **DISMISSED** with prejudice and **DENIED**.

2.    **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is

denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: August 27, 2019

Frank D. Whitney
Chief United States District Judge